EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WARREN HAROLD BROWN,<br><br>                           Petitioner. | Criminal Action No. 3:11-CR-63-01<br>Civil Action No. 3:14-CV-184 |

### **MEMORANDUM OPINION**

THIS MATTER is before the Court on *pro se* Petitioner Warren Harold Brown's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") (ECF No. 175). For the reasons set forth below, the § 2255 Motion is hereby DENIED.

**I.    BACKGROUND**

    **a.  *Factual Background***

Between November 1, 2008 and November 15, 2008, Winston Sylvester Oliver, II ("Oliver") began making plans to rob the Mr. Fuel Truck Plaza ("Mr. Fuel") in Ruther Glen, Virginia of United States currency. Oliver learned from his wife, Danielle Oliver, that Mr. Fuel employees kept large amounts of money in the cash register drawers.

On May 8, 2010, Warren Harold Brown ("Brown") went to Oliver's home in Chesterfield County. During the visit, Brown told Oliver that he was having money problems. Oliver told Brown to get into Oliver's blue Ford Explorer, which Brown did. At approximately 9:30 p.m., Brown and Oliver were parked at the Howard Johnson's motel, which is down the hill from Mr. Fuel. Oliver told Brown to rob Mr. Fuel. Oliver pulled a loaded revolver from underneath the front seat of the vehicle and gave it to Brown. Oliver told Brown there were no video cameras in the establishment so Brown would not get caught. Brown was initially reluctant, but eventually decided to go through with the robbery.

Brown entered Mr. Fuel and picked up a pack of crackers. He proceeded to the cash register and gave the pack of crackers to Sharon Jo Conrad ("Conrad"). After Conrad scanned the item, Brown pulled out the handgun and told Conrad to give him the money from the cash register. Conrad tried to open the register, but could not. Brown became agitated and fired the handgun, once or twice.

Theodore Edmond ("Edmond"), a customer in Mr. Fuel, saw what was happening and believed that Brown was going to kill Conrad and the other store clerk, Wanda Miss. Edmond grabbed two beer bottles, approached Brown from the rear, and hit Brown in the head with the bottles. In the ensuing struggle between Brown and Edmond, Brown shot Edmond four times as Brown fled the crime scene. Brown ran back to the car where Oliver was waiting. Oliver then drove the pair back to Richmond, Virginia.

### b. *Procedural Background*

On July 12, 2011, a federal grand jury returned a four-count, superseding indictment charging Brown and Oliver with the following offenses: Conspiracy to Commit Robbery Affecting Commerce, in violation of 18 U.S.C. § 1951(a) (Count One); Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Counts Two and Four); and Attempted Robbery Affecting Commerce, in violation of 18 U.S.C. § 1951(a) and 2 (Count Three). A joint jury trial commenced on September 12, 2011.[1] At the close of the Government's evidence, defendants Brown and Oliver moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The district court denied the motion. On September 14, 2011, the jury found both defendants guilty as charged in the superseding indictment.

The district court ordered preparation of a presentence investigation report ("PSR") for each defendant. The probation officer assigned to the case determined that Brown's offense level

---

[1] Brown was represented by Mark Tyndall ("Tyndall"). Tyndall's affidavit is attached as Exhibit B to the Government's memorandum in opposition.

was 28, and his criminal history category was VI, which yielded an advisory guideline range of 140-175 months' imprisonment for Counts One and Three. With respect to Count Two, Brown faced a mandatory minimum of 120 months' incarceration; on Count Four, Brown faced a mandatory minimum of 300 months' incarceration. On January 19, 2012, the district court sentenced Brown to 51 years of imprisonment (175 months' imprisonment concurrent on counts one and three; 120 months' imprisonment consecutive on count two, and 317 months' imprisonment consecutive on count 4). Although Brown maintained his innocence at the sentencing hearing, (Sentencing Hrg. Tr. 130:17–19), the Court declared that "he [was] living in a fantasy world peopled by the blind, because to anybody who can see it, it is clear that Mr. Brown is guilty of this offense," (*id.* at 30:25–31:2.)

On January 24, 2012, Brown filed a Notice of Appeal with the United States Court of Appeals for the Fourth Circuit.[2] On March 8, 2013, the Fourth Circuit affirmed Brown's conviction and dismissed the appeal of his sentence. *United States v. Winston Oliver and Warren Brown*, 513 F. App'x 311, 2013 WL 856704 (4th Cir. Mar. 8, 2013). Brown did not file a petition for certiorari in the United States Supreme Court.

On March 14, 2014,[3] Brown filed the instant § 2255 Motion. In his § 2255 Motion, Brown alleges six grounds for relief:

> Ground One: Ineffective Assistance of Trial and Appellate Counsel For Failing to Raise "Sears Rule" Claim That Petitioner Could Not Have Conspired With a Known Government Agent or Informant, Violating Petitioner's 5th, 6th and 14th Amendments
>
> Ground Two: Ineffective Assistance of Trial Counsel for Failing to Raise Affirmative "Entrapment" Defense
>
> Ground Three: Ineffective Assistance of Trial Counsel for Failing to Raise "Affirmative Defense of Incarceration" as to Brown's Participation in a Conspiracy From November 2008 Until May

---

[2] On appeal, Brown was represented by Mark Bodner ("Bodner").
[3] An inmate's document is deemed filed as of the date it is deposited in the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988). Brown executed his § 2255 Motion on March 5, 2014. Because Brown's judgment became final on March 8, 2013, his present Motion will be deemed timely. *See* 28 U.S.C. § 2255(f)(1) (setting a one-year statute of limitations from the date on which the judgment of conviction becomes final).

|               |                                                                                                                                                                                                                                                                                                                                                                    |
|---------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|               | 8, 2010                                                                                                                                                                                                                                                                                                                                                            |
| Ground Four:  | Ineffective Assistance of Trial Counsel for Failing to Move Under Rule 29 For Acquittal of All Counts in Indictment, Based Upon Insufficiency of Evidence to Prove Brown Entered Into an Ongoing Conspiracy From November 2008 Through May 2010, as Alleged in the Indictment |
| Ground Five:  | Ineffective Assistance of Trial Counsel for Failing to Object to Presentence Investigation Report Enhancement for "Brandishing" and "Discharging" a Firearm Under *Apprendi v. New Jersey*                                                                                                                                                                         |
| Ground Six:   | Fraud on the Court by Officers of the Court                                                                                                                                                                                                                                                                                                                        |

The United States filed a response in opposition on May 23, 2014 (ECF No. 181), and Brown subsequently filed a reply on September 3, 2014 (ECF No. 186).[4] The issue is now ripe for decision.

## II. **LEGAL STANDARD**

Under 28 U.S.C. § 2255 ("§ 2255"), a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence violates the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. § 2255(a); *see also Hill v. United States*, 368 U.S. 424, 426–27 (1962). A claim which does not challenge the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To prevail under § 2255, the movant bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *United States v. King*, 36 F. Supp. 2d 705, 707 (E.D. Va. 1999). A *pro se* petitioner is held to a less exacting standard than an attorney in drafting his petition. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Therefore, the Court should generously interpret Brown's factual allegations and legal contentions.

---

[4] The Court granted both the United States' Motion (ECF No. 179) and Brown's Motion (ECF No. 185) for extensions of time to file their response and reply briefs, respectively. (*See* ECF Nos. 180, 187.)

### III. **DISCUSSION**

Because five of Brown's six grounds for relief are premised on ineffective assistance of counsel, the Court will first outline the general law surrounding this issue.

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of *Strickland*, the performance prong, requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions that counsel faced." *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). The second prong of *Strickland*, the prejudice prong, requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. *Strickland*, 466 U.S. at 687. In essence, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

This ineffective assistance of counsel standard likewise applies to direct appeals of criminal convictions. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The Fourth Circuit has additionally held that appellate counsel's decision as to which issues are suitable for appeal "is entitled to a presumption that [counsel] decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993).

//

(1) <u>Ground One: Ineffective Assistance of Counsel Because Trial and Appellate Counsel Failed to Argue That Petitioner Could Not Have Conspired With a Known Government Agent or Informant, in Violation of the "Sears Rule," and The 5th, 6th and 14th Amendments</u>

In his first claim for relief, Brown argues that counsel knew that Oliver was a paid government informant, and in violation of the "Sears Rule" counsel failed to move to dismiss the indictment, or request a proper jury instruction, or move for judgment of acquittal under Rule 29. Additionally, Brown argues that his appellate counsel failed to preserve the issue of trial counsel's failure to raise the "Sears Rule" defense and request the proper jury instruction. Therefore, he contends that he was deprived of effective assistance of both trial and appellate counsel as guaranteed by the Sixth Amendment, as well as deprived of his liberty and due process as guaranteed by the Fifth and Fourteenth Amendments.

First, Brown's reference to the "Sears Rule" seemingly relates to the holding in *Sears v. United States*, 343 F.2d 139, 142 (5th Cir. 1965), where the Fifth Circuit held that an individual who acts as a government agent and enters into a conspiracy as an informer, cannot be a co-conspirator. The Fourth Circuit has mirrored this rule in various cases. *See United States v. Lewis*, 53 F.3d 29, 33 (4th Cir. 1995); *United States v. Hayes*, 775 F.2d 1279, 1283 (4th Cir. 1985), *United States v. Chase*, 372 F.2d 453, 459 (4th Cir. 1967). Brown argues that Oliver was a government agent at the time of the robbery, and thus he could not be convicted of conspiracy as alleged in Count One of the superseding indictment. In response, the Government argues that there was no credible evidence that Oliver was working as a government agent during Brown's participation in the robbery conspiracy. Further, there was no evidence that Oliver was a government agent whose assignment was to create and participate in armed robbery conspiracies. (Tyndall Aff. ¶ 3.) This dispute thus necessitates a review of the evidence.

During trial, the Government called Timothy Walker ("Walker") to the stand. Walker is employed with the Richmond Police Department and assigned to the DEA Task Force. (Tr. Vol. I 130:20–21.) On February 12, 2009, Walker interviewed Oliver after Oliver initiated contact with

Walker's office. (*Id.* at 134:7–14.) Oliver informed Walker that he had information regarding a drug organization within Richmond. (*Id.* at 139:17–19.) Oliver was subsequently signed up as a paid informant. (*Id.* at 139:23–24; *see also id.* at 118:6–9) (Detective Marshall Ellett testifying that Oliver was a DEA informant). Oliver signed a contract in which he promised not to commit any crimes while acting as an informant. (*Id.* at 135:5–7.) Oliver began work as an informant in October 2009. (*Id.* at 135:10–12; 136:14–15.) Oliver performed some controlled purchases of narcotics. (*Id.* at 137:3–4.)

Later on direct examination, Walker testified that he knew Oliver had been arrested in relation to the Mr. Fuel robbery. (*Id.* at 139:6–7.) He further testified that between May 8, 2010 through the time Oliver was arrested, May 21, 2010, Oliver never contacted Walker with any information regarding the robbery. (*Id.* at 139:18–140:1.) Finally, on redirect examination, Walker testified that after Oliver was arrested on May 21, 2010, Walker deactivated him as an informant. (*Id.* at 142:15–17.)

Attached to Brown's § 2255 Motion is a February 23, 2011 Synopsis written by Walker, detailing Oliver's initial meeting with government officials and his subsequent informant activities. The synopsis corroborates Walker's testimony. It specifically notes that "[o]n February 12, 2009, TFO Walker and S/A Mike Cash of Richmond D.O. Group 21 met and debriefed Winston Oliver at the Richmond DEA office in reference to drug information he wanted to provide to law enforcement." (§ 2255 Mot. Ex. A.) The synopsis specifies that the information provided by Oliver was in reference to cocaine rings and upper level cocaine and heroin dealers in the Richmond area, and details Oliver's controlled purchases of cocaine. (*Id.*) The synopsis also includes a paragraph regarding information about a homicide that occurred in Richmond, as well as an April 15, 2010 meeting between Oliver and "Target 3" that was set up to purchase a handgun that may have been used in a murder/robbery. The synopsis specifies that "the information received from Oliver was only drug information related to the City of Richmond." (*Id.*)

7

Although undisputed, Brown spends a significant portion of his reply brief detailing evidence that Oliver was a government agent at the time of the attempted robbery. The Government clearly agrees that Oliver was a paid informant. (Gov'ts Resp. at 13) ("During trial, evidence was elicited showing that, prior to the robbery, Oliver had been enlisted to work as an informant for the Richmond Police Department to assist in drug investigations."). However, the Government argues that because Oliver was not authorized to participate in a robbery conspiracy involving a truck stop in Caroline County, Virginia, he was not acting as an informant when he and Brown conspired to rob Mr. Fuel. (*Id.*) Brown counters the Government's argument by asserting that "as a government agent, the government did not know all of Oliver's activities, nor did it orchestrate his activities." (Reply at 14.) He alleges that in the instant case Oliver proceeded in the same manner as he did throughout the course of the entire informant agreement, namely instigating and participating in a crime and providing information to the government. (*Id.*) Although the government did not directly orchestrate his activities, Brown argues, without citation[5], that this does not exempt him as a government informant. (*Id.* at 15.)

But Brown undermines his own argument when he discusses the robbery/murder in April 2010. Brown states that "without the direct supervision of the government, but after obtaining information that could lead to a prosecution, [*Oliver*] *contacted his handler [Walker] to set up a [sic] undercover sting.*" (Reply at 14) (emphasis added). Here, Oliver never contacted Walker.[6] He proceeded to engage in the robbery without any direction or supervision from Walker. He did not attempt to contact Walker after the robbery. Thus, there is no evidence that Oliver was acting as a government informant with regard to the attempted robbery of Mr. Fuel.

---

[5] In his reply, Brown previously cites *United States v. Barnett*, 197 F.3d 138 (5th Cir. 1999) for the proposition that "an informer may be an agent of the government even if its officials do not directly orchestrate his activities." However, in *Barnett* the Fifth Circuit was addressing whether the district court erred by not granting Defendant's request for an entrapment instruction. *Id.* at 142. Brown attempts to expand *Barnett*'s reasoning to conform to his argument regarding the scope of an informant's agreement with the government. However, the Court will not consent to such a reading. *Barnett* will instead be discussed below under Brown's entrapment argument.

[6] There was evidence presented at trial, however, that after the attempted robbery Oliver did inform government officials that he would help them find the gun. (Tr. Vol. II 305:17–20.) But, Oliver denied possessing or owning the gun that was used in the robbery of Mr. Fuel. (*Id.* at 305:8–10.)

Indeed, the evidence overwhelmingly shows the opposite–that Oliver was an active, bona fide participant in the conspiracy. As Tyndall succinctly asserts in his affidavit, "There was no evidence that Oliver was a Government agent whose job was to create armed robbery conspiracies." (Tyndall Aff. ¶ 3.) With this in mind, Tyndall was not ineffective for failing to move the Court to dismiss the indictment pursuant to the "Sears Rule," for failing to request a jury instruction explaining the "Sears Rule," nor for failing to make a specific Rule 29 argument pursuant to the "Sears Rule." For that same reason, Brown's appellate counsel, Bodner, was not ineffective either. Because Brown's arguments with regard to the 5th, 6th and 14th Amendments rely on the same reasoning, these arguments must similarly fail.

(2) <u>Ground Two: Ineffective Assistance of Trial Counsel for Failing to Raise Affirmative "Entrapment" Defense</u>

Entrapment is an affirmative defense which requires the defendant to prove by more than a scintilla of evidence two related elements: "(1) government inducement to commit a crime and (2) the lack of predisposition on the part of the defendant to engage in criminal conduct." *United States v. Hsu*, 364 F.3d 192, 198 (4th Cir. 2004) (citing *Mathews v. United States*, 485 U.S. 58, 62–63 (1988)). The first element, "inducement," necessitates "government overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." *Id.* (citations and internal quotation marks omitted). In other words, "[t]he defense of entrapment is not applicable where one is induced to engage in criminal activity by a private citizen acting alone." *Barnett*, 197 F.3d at 143. Secondly, the element of "predisposition" refers to "the defendant's state of mind before government agents make any suggestion that he shall commit a crime." *Hsu*, 364 F.3d at 198 (citation and internal quotation marks omitted).

The evidence in this case supports the assertion that Oliver persuaded Brown to take a gun (supplied by Oliver) and rob Mr. Fuel. Thus, the only question the Court must answer is whether Oliver can be deemed a government agent? Again relying on *Barnett*, 197 F.3d 138,

9

Brown argues that "Oliver, a government, who instigated many crimes and the Mr. Fuel Robbery cannot now be left to this own devices because the government does not like the crimes he instigated." (Reply at 22.)

In *Barnett*, the defendant discussed plans with Rushiel Bevans ("Bevans") to kill one or possibly two individuals. *Barnett*, 197 F.3d at 140–141. Bevans secretly tape recorded the conversation. *Id.* Bevans then contacted the Drug Enforcement Administration ("DEA"), who subsequently contacted the Federal Bureau of Administration ("FBI"). *Id.* at 141. On appeal, the defendant contended that the district court erred in not granting his request for an entrapment instruction, arguing that Bevans was a government agent who induced his participation in the murder for hire scheme. *Id.* at 142. The Fifth Circuit held that "[t]he district court did not abuse its discretion in concluding that [the defendant's] evidence was insufficient to establish a jury question as to Bevans' status as a government agent prior to July 13, the time [the defendant] alleges Bevans induced him to participate in the murder for hire scheme." *Id.* at 143. Although Bevans spoke with the DEA, the DEA only informed Bevans to keep them informed of future developments–there was no agreement that Bevans would work on behalf of the government. *Id.* The Fifth Circuit found that Bevans could not "be characterized as a 'paid government informer' or 'active government informer'" as "[t]he record contain[ed] no evidence that the government made it [his] 'job' to be the *instigator of similar prosecutions*." *Id.* at 143–44 (emphasis added).

Similarly, in this case the record contains no evidence that the Government made it Oliver's job to be the instigator of the attempted robbery. For that reason and for all the reasons discussed in Browns' first ground for relief, Oliver cannot be deemed a government agent. Accordingly, Brown cannot satisfy the first prong required for entrapment, "inducement," and thus the second prong, "predisposition," need not be addressed. Consequently, Brown's argument for ineffective assistance of counsel for failure to raise an entrapment defense must fail.

> (3) Ground Three: Ineffective Assistance of Trial Counsel for Failing to Raise "Affirmative Defense of Incarceration" as to Brown's Participation in a Conspiracy From November 2008 Until May 8, 2010

In his third ground for relief, Brown argues that there is a fatal variance between the superseding indictment and both the evidence introduced at trial and the Government's concessions in its opposition memorandum. Specifically, count one of the superseding indictment states, "From in or about November 2008 through in or about May 2010 . . . defendants Warren Harold Brown and Winston Sylvester Oliver, II did knowingly, and unlawfully conspire with each other . . . ." Brown asserts that his "substantial rights were violated where the jury was allowed to believe that he conspired with Oliver and planned and took substantial steps to rob the Mr. Fuel for 18 months, rather that [sic] for one day." (Reply at 30.) Brown argues that his trial counsel was ineffective in failing to move the Court to dismiss the indictment as defective due to this fatal variance, failed to move to suppress the evidence and/or sever the trial, and failed to move pursuant to Rule 29 for judgment of acquittal as to the conspiracy charge. (Reply at 32–33.)

Rule 7 of the Federal Rules of Criminal Procedure requires an indictment to "be a plain, concise, and definite written statement of the essential facts constituting the offense charge." Fed. R. Crim. P. 7(c)(1). "A fatal variance occurs 'when the indictment is altered to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment.'" *United States v. Mason*, 532 F. App'x 432, 435 (4th Cir. 2013) (quoting *United States v. Allmendinger*, 706 F.3d 330, 339 (4th Cir. 2013)). However, not all variances are fatal. *Id.* If the Government's proof at trial diverges to some degree from the indictment but does not change the crime charged in the indictment, then a mere variance occurs. *Id.* "'A mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense.'" *Id.* (quoting *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999)); *see also United States v.*

*Brewer*, 1 F.3d 1430, 1437 (4th Cir. 1993) (citation omitted) ("The rule against variance protects defendants by insuring that the indictment provides them with adequate notice to prepare a defense and describes the crime with sufficient particularity to protect them from multiple prosecutions for the same offense."). If these interests are not harmed, then the variance is harmless error. *Brewer*, 1 F.3d at 1437.

Specifically with regards to dates alleged in an indictment, "'[w]here a particular date is not a substantive element of the crime charged, strict chronological specificity or accuracy is not required.'" *Mason*, 532 F. App'x at 436 (quoting *United States v. Kimberlin*, 18 F.3d 1156, 1159 (4th Cir. 1994)). The Fourth Circuit has opined that the jury need not find that the starting date of a conspiracy coincide with the starting date alleged in the indictment. *United States v. Queen*, 132 F.3d 991, 999 (4th Cir. 1997). "Rather, the trier of fact may find that the starting date of a conspiracy begins anytime in the time window alleged, so long as the time frame alleged places the defendant sufficiently on notice of the acts with which he is charged." *Id.*

In this case, the superseding indictment specifically alleges which acts were included in the conspiracy. In Count One, the superseding indictment details "overt acts in furtherance of the conspiracy," including the fact that Oliver began devising a plan to rob Mr. Fuel in November 2008, and in May 2010 Oliver and Brown finalized a plan to commit an armed robbery of Mr. Fuel. The specificity of the allegations fairly appraised Brown of the crimes with which he was charged. Apart from his conclusory assertions, (*see* Reply at 30), there is no evidence that Brown was surprised at trial or that the preparation of his defense was hindered. Thus, as Tyndall asserts, any motion based on Brown's incarceration from 2008 to May 2009 would have no merit. (Tyndall Aff. ¶ 5.) For that reason, Brown's ineffective assistance of counsel claim must fail.

//

//

**(4) Ground Four: Ineffective Assistance of Trial Counsel for Failing to Move Under Rule 29 For Acquittal of All Counts in Indictment, Based Upon Insufficiency of Evidence to Prove Brown Entered Into an Ongoing Conspiracy From November 2008 Through May 2010, as Alleged in the Indictment**

Rule 29 of the Federal Rules of Criminal Procedure states, "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). As Brown correctly notes, at the close of the Government's case-in-chief, Tyndall moved for judgment of acquittal pursuant to Rule 29. Tyndall argued that the government's witnesses were not credible, that the evidence was not sufficient to go forward, and he renewed all of his pretrial motions, including a request "that one of the 924(c)'s is dropped." (Tr. Vol. II 325:15–25.) The Court denied Tyndall's motion, finding that "if the evidence is credited, it is overwhelming. It is not even close." (*Id.* at 328:21–25.)

Brown now asserts that Tyndall acted unreasonably in failing to argue for a judgment of acquittal on the conspiracy charge.[7] He reiterates his argument that there was insufficient evidence to prove that Brown was part of a conspiracy as alleged in the indictment. For the reasons previously stated in this memorandum opinion, sufficient evidence existed to support a conspiracy between Oliver and Brown on May 8, 2010. For that reason, Tyndall was not ineffective for failing to raise this issue in his Rule 29 argument.

**(5) Ground Five: Ineffective Assistance of Trial Counsel for Failing to Object to Presentence Investigation Report Enhancement for "Brandishing" and "Discharging" a Firearm Under *Apprendi v. New Jersey***

Counts Two and Four of the superseding indictment charged Brown and Oliver with using and carrying a firearm during and in relation to a crime of violation, in violation of 18 U.S.C. § 924(c)(1) and 2. Counts Two and Four also incorporated Overt Acts 8 and 9 of Count One of the superseding indictment, respectively. Overt Acts 8 and 9 allege that Brown "used,

---

[7] Brown's § 2255 Motion did not clearly specify that he was challenging Tyndall's failure to request a judgment of acquittal on the conspiracy count. Rather, this argument was only specifically defined in Brown's reply. Because of this lack of clarity, the Government's Response and Tyndall's affidavit only argue that Tyndall did in fact move for a Rule 29 judgment of acquittal at the close of the Government's case. (*See* Govt's Resp. at 17–18; Tyndall Aff. ¶ 6.)

13

carried, possessed, brandished and discharged a firearm." 18 U.S.C. § 924(c)(1)(A)(i) provides for a minimum term of imprisonment of not less than five years for this crime. If the firearm is brandished, then the defendant is to be sentenced to a term of imprisonment of not less than seven years, 18 U.S.C. § 924(c)(1)(A)(ii), and if the firearm is discharged, then defendant is to serve a term of imprisonment of not less than ten years, 18 U.S.C. § 924(c)(1)(A)(iii). In the case of a second or subsequent conviction, the defendant shall be sentenced to a term of imprisonment of not less than 25 years. 18 U.S.C. § 924(c)(1)(C)(i). After being found guilty of Counts Two and Four, Brown was sentenced to the 10 year mandatory minimum sentence for the first discharge and the 25 year mandatory minimum for the second violation.[8]

Brown now asserts, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), ineffective assistance of counsel for failing to object to the presentence investigation report enhancement for "brandishing" and "discharging" a firearm. Additionally, in his reply Brown argues that pursuant to *Alleyne v. United States*, 133 S. Ct. 2151 (2013) the jury was required to specifically find the elements of "brandishing" or "discharging," which increased Brown's mandatory minimums.

First, with regards to *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490; *see also United States v. Harris*, 243 F.3d 806, 809 (4th Cir. 2001) (holding that *Apprendi* only applies to sentences beyond the prescribed statutory maximum). The Fourth Circuit has held that because § 924(c)(1) does not contain a maximum penalty, the application of the enhanced penalty provisions do not expose a defendant to a penalty greater than that already allowed under the statute. *United States v. Cristobal*, 293 F.3d 134, 147 (4th Cir. 2002). Rather, finding that the defendant was subject to enhanced penalties merely triggers mandatory minimum sentences, "thus cabining the district court's discretion when imposing a sentence for

---

[8] Brown was specifically sentenced to 317 months on Count Four.

the base offenses in § 924(c)(1), for which the maximum penalty is life." *Id.* (citing *Harris*, 243 F.3d at 809). In other words, the district court's finding that a defendant "brandished" or "discharged" a firearm under subsection (ii) or (iii), respectively, "triggered a mandatory minimum sentence, but did not 'increase[] the penalty . . . beyond the prescribed statutory maximum." *Harris*, 243 F.3d at 808 (quoting *Apprendi*, 530 U.S. at 490). Here, the Court properly imposed the mandatory minimum sentences required by statute and did not exceed the maximum penalty that could have been imposed. For that reason, *Apprendi* is inapplicable to the instant case.

Brown's next argument that "*Alleyne v. United States* is an intervening change of law" (§ 2255 Mot. at 14A) likewise fails. A new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive. *Tyler v. Cain*, 533 U.S. 656, 663 (2001). Although courts have found that *Alleyne* did announce a new rule of constitutional law, the Supreme Court has not held that *Alleyne* is retroactive on collateral review. *See In re Payne*, 733 F.3d 1027, 1029 (10th Cir. 2013); *Ferranti v. United States*, No. 1:91CR337-A, 2014 WL 2967944, at *2 (E.D. Va. June 30, 2014); *Williams v. United States*, No. 4:09cr00039, 2014 WL 526692, at *4 (W.D. Va. Feb. 7, 2014). *Alleyne* was decided on June 17, 2013. Brown was tried by a jury on September 14, 2011, and sentenced by this Court on January 19, 2012. Because the Supreme Court's decision is not retroactive, this Court need address Brown's instant argument. The Court also declines Brown's request to reserve his claim if *Alleyne* "is ever made retroactive." (Reply at 37.)

(6) Ground Six: Fraud on the Court by Officers of the Court

In his final claim for relief, Brown merely reiterates his prior arguments, that being there was no conspiracy pursuant to the "Sear's Rule" and Brown's purported incarceration from 2006 through 2009. He argues that "[t]he Government's and Counsel's [sic] Tyndall's awareness of the facts of this case, and their blatant and knowing misrepresentation of those facts is fraud upon this honorable Court and prejudice to petitioner Brown." (Reply at 38.)

15

The arguments presented in Brown's sixth ground for relief are based on evidence or a legal theory that was available to Brown on direct appeal and thus are barred by procedural default. *See Bousley v. United States*, 523 U.S. 614, 621 (1998).[9] "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and 'actual prejudice,' [citations omitted], or that he is 'actually innocent,' [citations omitted]." *Id.* at 622. Because these arguments have been addressed and disposed of above, the Court need not repeat its reasoning here as to why Brown has failed to demonstrate either cause or actual prejudice. With regards to actual innocence, a "petitioner must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* at 623 (citation and internal quotation marks omitted). Importantly, "actual innocence" means factual innocence, not mere legal insufficiency. *Id.* Although Brown attempts to allege actual innocence, he evidently misinterprets the standard. In his reply Brown blatantly states that he is not denying his participation in the attempted robbery of Mr. Fuel. Rather, he only claims entrapment as an affirmative defense. (Reply at 38.) For those reasons, Brown's sixth claim for relief must also be denied.

## IV. CERTIFICATE OF APPEALABILITY

A district court that enters a final order denying a § 2255 motion must grant or deny a certificate of appealability. Rule 11(a) of the Rules Governing Section 2255 Proceedings. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Miller-El*, 537 U.S. at 336–38 (citing *Slack*, 529

---

[9] On appeal, Brown argued (1) the district court erred in denying his motion to suppress his statements to Detective Ellett and Special Agent Umphlet, and (2) the district court erred in denying the defendants' joint motion to dismiss one of the two § 924(c) charges. *Oliver*, 513 F. App'x at 314, 315. Thus, Brown did not directly appeal the issues he now presents.

U.S. at 484). For the reasons stated more fully above, no law or evidence suggests Brown is entitled to further consideration of his claims. Accordingly, the Court DENIES a certificate of appealability.

## V. CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's § 2255 Motion and DENIES a certificate of appealability.

Let the Clerk send a copy of this Memorandum Opinion to the *pro se* Petitioner and all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this \_\_\_3rd\_\_\_\_ day of March 2015.